UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-80868-CIV-COHN/TURNOFF

PARC REGENT CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.

QBE INSURANCE CORP.,

    Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

**THIS CAUSE** is before the undersigned upon Plaintiff's Verified Motion for Attorney's Fees and Incorporated Memorandum of Law. **[DE 86]**. This matter was referred to the undersigned by the Honorable James I. Cohn, United States District Judge for the Southern District of Florida. **[DE 85]**. The Court has reviewed the motion, the response **[DE 87]**, the reply **[DE 89]**, various supplements **[DE 90, 91, 92]**, the court file, the applicable law, and is otherwise duly advised in the premises.

**Factual Background**

Plaintiff Parc Regent Condominium Association, Inc., is the governing body of a condominium, known as Parc Regent, located in Palm Beach County, Florida. It has been insured by QBE Insurance Corp. ("QBE"), since 2003. On November 21, 2006, a penthouse

CASE NO.: 09-80868-CIV-COHN

unit owner at Parc Regent hired Mickey's Plumbing ("Mickey's") to reconnect a hot water re-circulation pump. Mickey's connected the pump to an abandoned heat recovery pipe in the roof. As a result, water was forced into the roof system causing substantial damage.[1] At the time of the loss, the roof was approximately thirteen years old.

Parc Regent filed a claim with QBE. QBE sent an adjuster, Jeff Higgins ("Higgins"), to prepare a preliminary repair estimate. QBE authorized Parc Regent to hire an engineer to confirm the cause of the loss. The engineer, John Petreikis ("Petreikis"), determined that the scope of the damage caused by Mickey's was more extensive than Higgins had originally estimated and necessitated replacement of the entire roof. QBE hired Dan Lavrich and Jack Brown to provide opinions to counter Petreikis' opinions. QBE claimed that, prior to the subject incident, the roof had maintenance and repair issues. Thereon, the parties were engaged in the claims process. In 2007, QBE engaged counsel. In 2008, because QBE had yet to make any payments for repairs or otherwise, Parc Regent obtained a bank loan and replaced the roof at its own expense at an approximate cost of $360,000.00.

### Procedural Background

Parc Regent filed suit against QBE on June 10, 2009, seeking to recover the cost of replacing the roof, as well as the bank loan closing costs and interest attributable to the

---

[1] The parties dispute how long water ran through the mis-connected pipe. For purposes of this motion, it is not necessary to address this issue.

CASE NO.: 09-80868-CIV-COHN

borrowed monies. **[DE 1]**. Parc Regent retained the services of Ver Ploeg & Lumpkin, P.A. ("VPL"), and St. John, Core & Lemme, P.A. ("St. John").[2] **[DE 86, Ex. A]**. The parties entered into a contingency fee agreement, whereby the firms would only receive payment of fees if some recovery was made. Id.

The case was scheduled for trial in March 2010. On February 2, 2010, Parc Regent filed a Motion for Partial Summary Judgment. **[DE 73]**. On February 19, 2010, the parties entered into a settlement agreement resolving all issues, except attorney's fees and costs. While expressly denying liability or coverage for the claim, QBE agreed to pay Parc Regent the total amount of $481,579.89, representing, *inter alia*, the amount expended by Parc Regent to replace the roof, its bank loan closing and interest costs attributable to monies borrowed to replace the roof, as well as some other costs. On February 25, 2010, Judge Cohn entered an Order of Dismissal Due to Settlement, and referred the matter of fees and costs to the undersigned. **[DE 85]**.

### Verified Motion for Attorney's Fees

Parc Regent moved for attorney's fees and costs pursuant to Fla. Stat. § 627.428 (2002), requesting the amount of $534,591.50 in attorney's fees, plus the assessment of a

---

[2]St. John served as general outside counsel for Parc Regent.

CASE NO.: 09-80868-CIV-COHN

contingency risk multiplier of 1.25 to 1.5.[3] **[DE 86]**. Section 627.428 authorizes an award of reasonable fees to the prevailing insurance beneficiary. Fla. Stat. § 627.428. It is undisputed that Parc Regent is the prevailing party in this case. While QBE concedes Parc Regent's entitlement to fees, it disputes the amount requested, including the propriety and amount of a contingency risk multiplier. QBE argues that a reasonable fee for VPL is $161,109.00, and $20,850.50 for St. John, without the inclusion of a multiplier.

In support of the reasonableness of the requested fees, Parc Regent submitted the expert affidavit of Brenton N. Ver Ploeg, Esq., managing partner at VPL. **[DE 86, Exh. B]**. In opposition, QBE submitted the affidavit of Michaela D. Scheihing, Esq., managing partner at Boehm Brown Fischer Harwood Kelly and Scheihing, P.A. **[DE 87, Exh. A]**.

**Legal Standard**

Federal courts use the lodestar approach to arrive at an award of attorney fees. Norman v. The Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). When confronted with a claim for attorney's fees arising from a state statute, such as Fla. Stat. § 627.428, federal courts sitting in diversity must follow the substantive state law. Trans Coastal Roofing Co., Inc. v. David Boland, Inc., 309 F.3d 758, 760 (11th Cir. 2002). Florida has adopted the federal lodestar approach in determining attorney fee awards. Florida

---

[3] Accounting for the multiplier, the total amount of fees sought is between $668,239.37 and $801,887.25.

CASE NO.: 09-80868-CIV-COHN

Patient's Comp. Fund v. Rowe, 472 So.2d 1145, 1150 (Fla. 1985) (adopting the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974) (*overruled on other grounds*, Blanchard v. Bergeron, 489 U.S. 87 (1989)). To arrive at the lodestar amount, the court must determine a reasonable hourly rate for the attorneys' services and a reasonable number of hours expended on the claim, and then multiply the two figures together. Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). The movant bears the burden of documenting the hours expended and the hourly rates. ACLU of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999).

The court may adjust the lodestar amount upward or downward based on considerations such as the results obtained and the quality of the representation. Schafler v. Fairway Park Condo. Ass'n, 324 F. Supp. 2d 1302, 1313 (S.D. Fla. 2004). However, in awarding attorney's fees, courts are not "authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Barnes, 168 F.3d at 428.

Parc Regent bases its fee request on the following hourly rates and number of hours expended by each attorney and paralegal participating in this case on its behalf:

| Timekeeper | Position | Hourly Rate | Hours Claimed | Total Claimed |
|---|---|---|---|---|
| R. Hugh Lumpkin | Partner | $525.00 | 185.4 | $97,335.00 |
| Meghan Moore | Partner | $325.00 | 386.4 | $125,580.00 |

CASE NO.: 09-80868-CIV-COHN

| Audwin F. Levasseur | Associate | $250.00 | 324.0 | $81,000.00 |
| Jeffrey Greyber | Associate | $215.00 | 28.5 | $6,127.50 |
| Jonathan Gold | Associate | $195.00 | 243.9 | $47,560.50 |
| Ashley Hacker | Associate | $195.00 | 4.9 | $955.50 |
| Ana Santa Ana | Paralegal | $170.00 | 537.3 | $91,341.00 |
| Madelin Espinosa | Para Clerk | $95.00 | 356.4 | $33,858.00 |
| Suhaill Machado | Law Clerk | $160.00 | 44.3 | $7,088.00 |
| David Core* | Partner | $295.00 | 41.3 | $2,183.50 |
| Gilbert Moore* | Associate | $250.00 | 122.7 | $30,675.00 |
| Roberta Hintemeyer* | Paralegal | $125.00 | 7.1 | $887.50 |

*Timekeepers with an * next to their name are employed by St. John.

In her affidavit, Ms. Scheihing represented that the reasonable hourly rates for handling this type of matter were as follows: Hugh R. Lumpkin at $300-350; Megan C. Moore at $150-175; Jeffrey L. Greyber at $135-150; Jonathan E. Gold at $125-135 as an Associate, and $110-115 as a Law Clerk prior to admission to the Florida Bar; Audwin F. Levasseur at $150-175; David A. Core at $295; Gilbert V. Moore at $150-175; all paralegal work at $85-100; and Madelin Espinosa at $65-75. [DE 87, Exh. A].

A. **Reasonable Hourly Rates**

The first step in determining the lodestar amount is to determine a reasonable hourly rate, which is "the prevailing market rate in the relevant legal community for similar

services by lawyers of reasonably comparable skills, experience, and reputation." <u>Norman</u>, 836 F.2d at 1299 (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 895-96, n. 11 (1984)). The fee applicant bears the burden of establishing the claimed market rate. <u>Id</u>. at 1303 (citing <u>Hensley</u>, 461 U.S. at 437). Prevailing market rates may be established by reference to, *inter alia*, prior precedent showing reasonable rate adjudications for the fee applicant, affidavits of other attorneys or experts, and the court's own expertise. <u>Haugh v. Sec'y of the Dep't of Health & Human Servs.</u>, No. 90-3128V, 1999 WL 525539, at *2 (Fed. Cl. 1999). Where there is a lack of documentation or testimonial support regarding fees, the court may make the award based on its own experience and without any additional evidentiary hearings or pleadings, because the court is itself an expert on the question of reasonable fees. <u>Norman</u>, 836 F.2d at 1303 (citing <u>Davis v. Bd. of Sch. Comm'rs of Mobile County</u>, 526 F.2d 865, 868 (5th Cir. 1976)).

In support of the reasonableness of the requested hourly rates, the parties cite several cases establishing varying reasonable hourly rates for partners, associates, and legal staff. In particular, Parc Regent cited <u>Parrot, Inc. v. Nicestuff Dristrib. Int'l</u>, where the court held that, in 2008, "an hourly rate of $475 for a partner with 20 years of experience, $310 for a fifth-year associate, and $250 for a third-year associate," fell well within the rates charged by law firms in the local market at the time. No.06-61231-CIV, 2010 WL 680948, at *12 (S.D. Fla. Feb. 24, 2010). QBE argued that the holding in <u>Parrot</u> was inapplicable

because the Court specified that it was limited to the circumstances of that case. However, the holding in Parrot was restricted to the facts of the case only with respect to the court's determination of a reasonable hourly rate for paralegal work. Id. at *12, n.9. Both parties cited Chalfonte Condo. Apartment Ass'n v. QBE Ins. Corp., No. 06-81046-CIV, [DE 255], (S.D. Fla. Feb. 29, 2008) (finding reasonable hourly rates to be $300 for attorneys with more than 20 years' experience, $250 for less experienced attorneys with more than three years' experience, and $75 for all paralegals), and Pelican Pointe of Sebastian II Condo. Ass'n, Inc. v. Empire Indem. Ins. Co., No. 05-14142-CIV, [DE 88], (S.D. Fla. Nov. 5, 2007) (setting a reasonable hourly rate of $250 for all attorneys and $75 for all paralegals), in support of their respective positions. In Pelican Pointe, the Court relied on the Eleventh Circuit's conclusion in Norman that the reasonable hourly rate for attorney's fees should be determined by analysis of the actual skills utilized by the attorneys in the case at bar and determined that the skill demonstrated by the attorneys was not worthy of the $350 to $400 hourly rate requested by the plaintiff. Pelican Pointe, No. 05-14142-CIV, [DE 88], at 4 (citing Norman, 836 F.2d at 1301).

Additionally, in support of its hourly rate argument, QBE cited Dunworth v. Tower Hill Preferred Insurance Co., where the Court found that there was nothing novel, complex, or difficult about a contractual dispute over insurance coverage, regardless of how hotly contested it may have been. Dunworth v. Tower Hill Preferred Ins. Co., No. 05-14019-CIV,

CASE NO.: 09-80868-CIV-COHN

2006 WL 889424, at *3 (S.D. Fla. Feb. 14, 2006). However, these factors are properly taken into consideration with respect to the number of hours expended on a case, not the hourly rate. In Rowe, the Florida Supreme Court held that the criteria set forth in Rule 4-1.5(b), Rules Regulating the Florida Bar, should be utilized in determining a reasonable attorney fee.[4] Rowe, 472 So.2d at 1150. When applying those factors, the court should exclude from

---

[4]Rule 4-1.5(b) provides:

**Factors to Be Considered in Determining Reasonable Fee.** Factors to be considered as guides in determining a reasonable fee include:

> (1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
>
> (4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
>
> (8) whether the fee is fixed or contingent, and, if fixed as to the amount or rate, then

CASE NO.: 09-80868-CIV-COHN

its consideration the time and labor required, the novelty, complexity, and difficulty of the questions involved, the results obtained, and whether the fee is fixed or contingent. Id. at 1150-51. Thus, the factors relating to the novelty and difficulty of the subject matter, while important to the determination of the reasonable lodestar value, are only properly assessed in determining the reasonable number of hours expended. Id.

Upon review of the requested hourly rates, the affidavits, the applicable law, and relying on the Court's own expertise, the undersigned finds that the hourly rates requested by VPL and St. John are high, but finds that the rates suggested by QBE are unreasonably low and not illustrative of the market rates charged in the community by attorneys of reasonably comparable skill, expertise, and reputation for similar services. Upon due consideration, the undersigned finds the applicable market hourly rates for the VPL and St. John attorneys and staff to be as follows: (a) Hugh R. Lumpkin at $500; (b) Megan C. Moore at $300; (c) Jeffrey L. Greyber at $200; (d) Jonathan E. Gold at $175 as an associate and at $110 as a law clerk; (e) Audwin F. Levasseur at $250; (f) Ashley Hacker at $175; (g) David A. Core at $295; (h) Gilbert V. Moore at $250; (I) David Core at $295; (j) Gilbert Moore at $ 250; (k) all paralegal work at $100; and (l) Madelin Espinosa at $75; and (m) Suhaill Machado at $110.

---

whether the client's ability to pay rested to any significant degree on the outcome of the representation.

CASE NO.: 09-80868-CIV-COHN

### B. Reasonable Hours Expended

Next, the Court must determine the number of hours reasonably expended on the case. Norman, 836 F.2d at 1301. The burden is on the moving party to submit accurate time records for this calculation. FIGA v. R.V.M.P. Corp., 681 F. Supp. 806, 807 (S.D. Fla. 1988). Fee applicants must exercise "billing judgment" in preparing their applications, which requires the exclusion of all "excessive, redundant, or otherwise unnecessary [hours]." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Norman, 836 F.2d at 1301. Objections to the number of hours sought must be specific and reasonably precise. Scelta v. Delicatessen Support Sevs., Inc., 203 F.Supp.2d 1328, 1332 (M.D. Fla. 2002). Generalized statements by the opposing party that the time spent was unreasonable or unnecessary are accorded little weight. Schafler, 324 F. Supp. 2d at 1314 (citing Norman, 836 F.2d at 1301). Accordingly, "a fee opponent's failure to explain exactly which hours [he or she] views as unnecessary or duplicative is generally viewed as fatal." Id. at 1333; See also Jin Zhi Star LT. LLC v. Am. Zurich Ins. Co., 2009 WL 2899913, at *6 (S.D. Fla. Sep. 9, 2009) (obliging opponent of a fee application "to provide specific and reasonably precise objections concerning hours that should be excluded"). Further, although the court must be "reasonably precise" in making exclusions, in dealing with voluminous fee records, a court is not required to conduct an hour-by-hour review. Norman, 836 F.2d at 1301; Villano v. City of Boynton Beach, 254 F.3d 1302, 1311 (11th Cir. 2001).

CASE NO.: 09-80868-CIV-COHN

In assessing the reasonable number of hours expended, it is proper to analyze the novelty, complexity, and difficulty of the case at bar. As QBE previously argued, this court in Dunworth concluded that there was nothing novel, complex, or difficult about a contractual dispute over insurance coverage, regardless of how hotly contested it may have been. Dunworth, 2006 WL 889424, at *3. Parc Regent contended that the number of issues presented in this case throughout the proceedings distinguished this case from a simple contractual dispute. The Court does not agree. Upon careful review of the proceedings, the Court finds no evidence that the issues presented were significantly more novel or complex than other similar contractual disputes over insurance coverage.

Parc Regent's attorney fee request is based upon a total of 2,282.2 hours expended between VPL and St. John. QBE specifically objected to the reasonableness of the hours requested by Parc Regent for the following tasks: (1) multiple attorneys attending four depositions; (2) preparing and filing Plaintiff's Motion to Strike Affirmative Defenses; (3) drafting a Motion to Withdraw its Motion to Strike; (4) writing a demand letter; (5) preparing Plaintiff's Motion for Partial Summary Judgment; (6) drafting and revising Plaintiff's Motion to Compel; (7) drafting its Reply to QBE's Response to Plaintiff's Motion to Compel; (8) work related to the Civil Remedy Notice, and related work to potential "bad faith" claims; (9) travel time; and (10) time related to internal conferences and communications.

QBE argued that Parc Regent should not be allowed to recover fees incurred by multiple lawyers attending each of four depositions. Parc Regent argued that QBE's own conduct in occasioning delays necessitated this arrangement. While the Court sympathizes with the efforts required to adjust to scheduling changes, it is not appropriate to bill the time for two lawyers to attend one deposition.

Next, QBE argued that Parc Regent billed an excessive number of hours for drafting, revising, and filing various motions and letters, to wit: a Motion to Strike Affirmative Defenses, which was subsequently the subject of a Motion to Withdraw; a demand letter; a Motion for Partial Summary Judgment; and a Motion to Compel, along with a reply thereto. Upon reviewing the billing records, the Court finds that many hours were billed in connection with these matters. According to VPL's breakdown of fees by timekeepers, it billed approximately 51.55 hours with respect to the Motion to Strike Affirmative Defenses, which was later withdrawn. VPL indicated that it had a summer law clerk working on the motion, who was billed at a lower rate to account for her lack of experience. Moreover, two (2) hours of her time were written off. The undersigned finds that, even if billed at a lower rate, the number of hours spent on the Motion to Strike Affirmative Defenses was excessive and should be reduced. Further, VPL billed approximately twenty-four (24) hours in connection with the drafting and revising of a demand letter, approximately 153.9 hours in connection with a partial summary judgment motion, and

CASE NO.: 09-80868-CIV-COHN

approximately 206.97 hours in connection with motions to compel and for protective order. Motions for summary judgment are fact-intensive and require an excellent command of the issues and applicable law. Here, although the hours spent on the Motion for Partial Summary Judgment were rather high, a review of the record indicates that the case settled shortly after the motion was filed. Thus, the Court finds that the hours spent on the summary judgment motion were justified. As to discovery, Parc Regent indicates that much time was spent on these matters due to, *inter alia*, rolling production. Insurance cases usually involve massive amounts of documents that must be reviewed, analyzed, and compiled. The undersigned does not find that an inordinate amount of time was billed for matters pertaining to discovery. QBE also argued that hours for work related to the Civil Remedy Notice, as well as hours related to potential bad faith claims, should not be included in a fee award because they were not pursued. The Court agrees.

Finally, QBE argued that hours attributable to traveling from Miami to West Palm Beach, internal conferences between VPL employees, as well as hours that were vague, excessive, and duplicative or unrelated to this litigation, should be excluded. Parc Regent argued that, according to the case law, travel time is compensable. Indeed, district courts in this Circuit have held that travel time to neighboring cities by local attorneys is compensable. <u>Cuban Museum of Arts & Culture, Inc. v. City of Miami</u>, 771 F. Supp. 1190, 1192 (S.D. Fla. 1991) (declining to disallow travel time to Miami of Ft. Lauderdale attorney

CASE NO.: 09-80868-CIV-COHN

where attorney was from neighboring district and fees were "no greater than the travel time that many attorneys working within the Miami division of this court would face when traveling to hearings in downtown Miami"); Am. Mobile Sys., Inc. v. Ware, No. 90-138-CIV-T-17, 1992 WL 167262, at *4 (M.D. Fla. Jul. 1, 1992) (refusing to deduct travel time to Florida cities reasonably incurred by local attorney). As to the internal conferences and QBE's claim that certain hours are vague, duplicative and/or irrelevant, QBE's failure to provide specific objections is fatal. See Schafler, 324 F. Supp. 2d at 1333; Jin Zhi Star, 2009 WL 28899913, at *6.

With respect to the hours requested for work performed by Madelein Espinosa, who is listed as a "Para Clerk," the Court is unfamiliar with this position. Upon review of Parc Regent's time records, the Court concludes that the work performed by the Para Clerk was mostly clerical in nature, which is not compensable. Scelta, 203 F. Supp at 1334 ("[W]ork that is clerical or secretarial in nature is not separately recoverable"); Inman v. Apfel, No. 97-CV-1273-J-HTS, 2000 WL 1221858, at *2 (M.D. Fla. Jul. 14, 2000) ("[T]asks of a clerical nature are not compensable as attorney's fees."); Norman, 836 F.2d at 1306 ("[A] fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment.")

In calculating the reduction of excessive fees, the Court may either conduct an hour-

CASE NO.: 09-80868-CIV-COHN

by-hour analysis or elect to reduce fees by using an across-the-board method. <u>Bivens v. Wrap It Up, Inc.</u>, 548 F.3d 1348, 1351 (11th Cir. 2008); <u>Kenny A. Ex rel. Winn v. Perdue</u>, 532 F.3d 1209, 1220 (11th Cir. 2008), *cert. granted*, 129 S.Ct. 1907 (2009). In this case, Parc Regent has submitted documentation detailing 2,282.2 hours expended on the case by various attorneys and legal staff, and QBE has suggested a substantial reduction in fees. Rather than deducting a specific number of hours for each of the thirteen (13) timekeepers, the undersigned elects to apply a global reduction to account for the various billing infirmities discussed herein, as well as the adjusted hourly rates.

Accordingly, the undersigned finds that a reduction is appropriate from the amount of attorney's fees sought by VPL and St. John to account for the adjusted hourly rates and the various infirmities discussed *supra*. The Court will apply a 30% reduction to the amount of $490,845.50 in attorney's fees requested by VPL. QBE focused its arguments mainly on the billing by VPL, as most of the specific objections applied to work done by VPL. Upon review of the billing and accounting for the adjusted rates, the Court will apply a 20% reduction from the amount of $43,746.00 in attorney's fees requested by St. John. Thus, VPL shall be awarded the total amount of **$343,591.85** in attorney's fees and St. John shall be awarded the total amount of **$34,996.80** in attorney's fees.

### Contingency Risk Multiplier

After the lodestar amount is established, the court may adjust the fee by applying

a contingency risk multiplier. Rowe, 472 So. 2d at 1151. In Standard Guaranty Insurance Co. v. Quanstrom, the Florida Supreme Court set forth the factors to be considered in determining whether a multiplier is necessary:

> (1) whether the relevant market requires a contingent fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in Rowe, 472 So.2d 1145 (Fla. 1985), are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client."

Standard Gaur. Ins. Co. v. Quanstrom, 555 So.2d 828, 834 (Fla. 1990). If the court determines that the application of a multiplier is appropriate, then it must determine the range of the multiplier to be applied. In Quanstrom, the Court provided for a multiplier of 1 to 1.5 if the trial court finds that success was more likely than not at the outset; a multiplier of 1.5 to 2 if the likelihood of success was approximately even at the outset; and a multiplier of 2 to 2.5 if success was unlikely at the outset of the case. Id.

Parc Regent requests a fee multiplier of 1.25 to 1.5 based upon the fact that only a few attorneys were qualified to achieve the results obtained in this case and that the amount of the claim would be exceeded by the number of hours required by QBE's conduct in this type of dispute. QBE argued that Parc Regent's counsel could have taken a retainer in order to mitigate the risk of non-payment, and that they had offered to settle the case prior to suit being filed.

CASE NO.: 09-80868-CIV-COHN

Both parties argued that the prime consideration in assessing a multiplier is access to counsel without the use of a contingency risk multiplier. <u>Bell v. U.S.B. Acquisition Co. Inc.</u>, 734 So. 2d 403, 411 (Fla. 1999). QBE argues that no contingency fee multiplier should be applied in this case because it would not have been difficult for an insured, such as Parc Regent, to obtain competent counsel in connection with this insurance claim case without a multiplier and because § 627.428 provides for attorney's fees. QBE referenced several attorneys and firms that routinely handle such matters in this community and argued that Parc Regent did not provide evidence of attorneys who would not or could not have taken a similar case without a multiplier.

Parc Regent recognized that this Court has declined to award a fee multiplier in similar litigation against QBE. In <u>Buckley Towers Condominium, Inc. v. QBE Insurance Corp.</u>, this Court found that the plaintiff failed to present sufficient evidence that the relevant market required a contingency fee multiplier to obtain competent counsel. <u>Buckley Towers Condo., Inc. v. QBE Ins. Corp.</u>, No. 07-22988-CV, [DE 458], (S.D. Fla. May 27, 2009). Parc Regent noted that <u>Buckley</u> involved a large claim whereas this case involved a much smaller claim that was modest in comparison to the effort required in getting QBE to pay due to its litigation practices. A percentage of that amount could not offset the risk of non-payment nor provide incentive to induce a firm to take the case on contingency. Parc Regent argued that modest damages in relation to the effort required made it difficult to secure

CASE NO.: 09-80868-CIV-COHN

competent counsel. Moreover, Parc Regent argued that the fee-shifting provided for in § 627.428, alone, is not enough of an incentive given that fees are often written off in a settlement and fee motions are costly to prepare, which time is not recoverable where entitlement is conceded. Finally, as to QBE's indication that it had offered to settle the claim, Parc Regent argued that QBE had claimed fraud and refused to pay until it filed its motion for partial summary judgment.

Upon consideration of the arguments in light of the Quanstrom factors, the Court finds that no contingency risk multiplier should be applied in this case. This case did not involve novel or complex issues of law. These cases typically turn on issues of fact rather than complex law. While the market may require a contingent fee contract to obtain competent counsel, it does not require the application of a multiplier, and there is insufficient evidence to demonstrate otherwise. Jablonski v. St. Paul Fire and Marine Ins. Co., No. 07-cv-00386, 2010 WL 1417063, at *10 (M.D. Fla. Apr. 7, 2010); see, Sun Bank of Ocala v. Ford, 564 So.2d 1078, 1079 (Fla. 1990) (finding that the existence of a contingent fee agreement for representation does not mandate automatic application of a contingency multiplier). The letter of engagement provided that counsel would be entitled to "either the percentage of recovery discussed below [35% if the matter settled or was tried], or the amount of fees awarded by the court under the applicable fee statute, whichever yields the higher fee." **[DE 86]** at Exh. 1. In this way, counsel's ability to elect the fee mitigated

CASE NO.: 09-80868-CIV-COHN

the risk of non-payment or insufficient payment. Further, the undersigned finds that the Rowe factors do not support the application of a multiplier. In light of these circumstances and Parc Regent's failure to present sufficient evidence that Parc Regent would have had difficulty securing other competent counsel, no multiplier shall be applied to the lodestar amount and the Court need not address the issue further.

## Conclusion

After careful review of the record and for the aforesaid reasons, it is hereby **ORDERED AND ADJUDGED** that the Verified Motion for Attorneys Fees **[DE 86]** is **GRANTED-IN-PART AND DENIED-IN-PART**, as follows: Plaintiff is awarded the amount of **$343,591.85** in attorney's fees for work performed by Ver Ploeg & Lumpkin, P.A., and **$34,996.80** in attorney's fees for work performed by St. John, Core & Lemme, P.A., for a total award of attorney's fees in the amount of **$378,588.65**. The Motion is **Denied-in-part** to the extent that Parc Regent requested a larger lodestar value and a multiplier.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20 day of October 2010.

**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc: Hon. James I. Cohn
Counsel of Record